```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/9/2026
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

VICTORY BOYD and THE SONGS OF GLORY,

        Plaintiffs,

-against-

JACQUES BERMON WEBSTER II p/k/a TRAVIS SCOTT, CACTUS JACK RECORDS, LLC, CACTUS JACK PUBLISHING, LLC, EPIC RECORDS, SONY MUSIC ENTERTAINMENT, SONY MUSIC PUBLISHING, AUDEMARS PIGUET, SOLANA ROWE p/k/a SZA, NAVADIUS WILBURN p/k/a FUTURE, JAHMAL GWIN, JAHAAN SWEET, NIMA JAHABIN, EDGAR PANFORD, "JOHN DOE ENTITIES" 1-10 and "JOHN DOES" 1-10,

        Defendants.

1:25-cv-181-MKV

OPINION & ORDER DENYING IN PART & GRANTING IN PART THE MOTION TO DISMISS

---

MARY KAY VYSKOCIL, United States District Judge:

## PROCEDURAL HISTORY

Plaintiffs Victory Boyd ("Boyd") and The Songs of Glory ("Songs of Glory") (together, "Plaintiffs") initiated this action with the filing of a complaint. [ECF No. 4] (the "Complaint"). Plaintiffs named as defendants Jacques Bermon Webster II ("Travis Scott"), Cactus Jack Records, LLC ("CJ Records"), Cactus Jack Publishing, LLC ("CJ Publishing"), Epic Records ("Epic"), Sony Music Entertainment ("Sony Entertainment"), Sony Music Publishing ("Sony Publishing"), Audemars Piguet, Solana Rowe ("SZA"), Navadius Wilburn ("Future"), Jahmal Gwin ("Gwin"), Jahaan Sweet ("Sweet"), Nima Jahanbin ("Jahanbin"), Edgar Panford ("Panford"), and twenty "John Does" (collectively, "Defendants").

By stipulation in response to a letter identifying deficiencies in the Complaint, [ECF No. 45], Plaintiffs filed a first amended complaint. [ECF No. 46] (the "First Amended Complaint" or "FAC"). In response to a contested pre-motion letter identifying further deficiencies in the FAC,

1

[ECF Nos. 46, 47], the Court afforded Plaintiffs one "last opportunity to amend in response to any issue raised in the parties' pre-motion letters." [ECF No. 49]. Plaintiffs again amended. [ECF No. 51] (the "Second Amended Complaint" or "SAC"). Attached as a single exhibit to the Second Amended Complaint are copyright registrations, one numbered and dated "SR0000986420 / 2023-12-12," [ECF No. 51-1 at 1] (the "First Registration"), and another numbered and dated "PAU004267233 / 2025-06-20," *id.* at 3 (the "Second Registration").[1]

As reflected in the Second Amended Complaint, Plaintiffs maintain this action under the Copyright Act, Title 17 of the United States Code, for actual damages against all Defendants, SAC Count I; statutory damages against all Defendants, SAC Count II; a demand for an accounting against all Defendants, SAC Count III; fees and costs against Travis Scott, SAC Count IV; a preliminary injunction against all Defendants, SAC Count V; and a declaratory judgment, SAC Count VII.[2]

Defendants moved to dismiss. [ECF No. 55] (the "Motion"). Because of deficiencies in Plaintiffs' service of certain Defendants, [ECF Nos. 66, 67, 69, 76], the Motion was filed on behalf of only Travis Scott, CJ Records, CJ Publishing, Sony Entertainment, Sony Publishing, SZA, Future, and Gwin (the "Moving Defendants").[3] Plaintiffs voluntarily dismissed their case against Audemars Piguet with prejudice. [ECF No. 64].

---

[1] "The district court [is] entitled to take judicial notice of [Plaintiffs'] federal copyright registrations, as published in the Copyright Office's registry." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005). The Court has independently identified and reviewed the "official, published copyright registrations," *id.*, as published on the Public Records System of the Copyright Office. *See* Like the Way it Sounds., Public Records System, U.S. Copyright Office, https://publicrecords.copyright.gov/detailed-record/voyager_35971749 (last visited Feb. 14, 2026); Like the way it sounds., Public Records System, U.S. Copyright Office, https://publicrecords.copyright.gov/detailed-record/voyager_38803766 (last visited Feb. 14, 2026).

[2] Count VI, which claimed third-party copyright infringement against Audemars Piguet, was dropped when any claims against that Defendant were voluntarily dismissed. *See* [ECF No. 64].

[3] For reasons not entirely clear to the Court, it does not appear that Epic joined the Moving Defendants.

In support of the Motion, the Moving Defendants attached a memorandum of law, [ECF No. 55-1] (the "Memorandum" or "MTD"), a request for judicial notice, [ECF No. 55-2] (the "Notice Request"), and an audio exhibit, [ECF No. 55-3] (the "Audio Exhibit"). Plaintiffs filed an opposition. [ECF No. 63] (the "Opposition" or "Opp."). The Moving Defendants replied. [ECF No. 65] (the "Reply").

## FACTUAL BACKGROUND

In 2019, Kanye West ("Ye") provided Boyd with "some chords and melodies that he liked" and asked her to write him music. SAC ¶ 25. She did so, writing "the lyrics by herself" for a "demo" (the "Demo") that she sent back to Ye shortly thereafter. *Id.* She "did not write, create or intend to write or create" the Demo with any of the Defendants. *Id.* The Demo took the form of a "voice note." *Id.* ¶ 28. While Ye had "planned to release a song . . . based on and cop[ying]" the Demo, *id.* ¶ 29, no such song was released on his next album, *id.* ¶ 30.

At some point, Ye played the Demo for Travis Scott. *Id.* ¶ 34. Ye "left the [Demo] in a studio in Wyoming," *id.* ¶ 35, where Travis Scott accessed and copied it, *id.* ¶ 36. *See also id.* ¶ 44 (citing a subsequent interview with Ye). In May 2023, Travis Scott shared the Demo with certain other Defendants and, collaborating with them, created a purportedly infringing work called *Telekinesis*. *Id.* ¶¶ 37–40. *Telekinesis* was released in July 2023. *Id.* ¶ 40. Boyd was credited as a co-writer in the metadata provided to streaming platforms. *Id.* ¶ 42.

In November 2023, Audemars Piguet contacted Boyd seeking permission to use *Telekinesis* in an advertising campaign (the "Campaign"), *id.* ¶ 45, which she declined, *id.* ¶ 46, but which Defendants unilaterally granted, *id.* ¶ 46.

In December 2023, Boyd notified Defendants that she "objected to the planned broadcast of [*Telekinesis*]." *Id.* ¶ 48. Nevertheless, the Campaign was initiated. *Id.* ¶ 49. Thereafter, the Demo was registered with the Copyright Office—through Plaintiffs' counsel in this action—as a

"Sound Recording and Musical Work (with or without lyrics)" authored by Boyd in 2019. First Registration. Travis Scott "has performed 'Telekinesis' at least 145 times since July 27, 2023 and at least 115 times since December 12, 2023." SAC ¶ 52. The song is also available on streaming, download, and sales platforms. *Id.* ¶ 53. Shortly before the filing of the Second Amended Complaint, the Demo's "lyrics" were registered—again through Plaintiffs' counsel—with the Copyright Office as having been authored by Boyd in 2019. Second Registration.

## LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must allege "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court must accept as true all factual allegations in the complaint and must draw all inferences in the plaintiff's favor. *Littlejohn v. City of New York*, 795 F.3d 297, 306 (2d Cir. 2015). However, the Court need not accept conclusory assertions. *Whiteside v. Hover-Davis, Inc.*, 995 F.3d 315, 321 (2d Cir. 2021).

The "complaint is deemed to include any written instrument attached to it," such as the First and Second Registrations attached to the Second Amended Complaint here. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) (quoting *Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995)). A court may also take judicial notice of federal copyright registrations that are not attached to the complaint, as well as facts that can be "readily determined from sources whose accuracy cannot reasonably be questioned." *Island Software & Computer Serv., Inc. v. Microsoft Corp.*, 413 F.3d 257, 261 (2d Cir. 2005). Even at the pleading stage, a court is not required to accept allegations that are "contradicted by" such "documentary evidence." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 422 (2d Cir. 2011).

## ANALYSIS

### I. Copyright Registration

The Moving Defendants make two, somewhat confused, arguments with respect to copyright registration. While both have a temporal dimension, the first and more significant argument turns on the validity of a registration, while the second concerns timing exclusively. The Court assesses each argument in turn.

#### a. Validity

The Moving Defendants' principal argument is that the First Registration was invalid, because "Boyd knowingly omitted . . . material information about the authorship" of the registered work, MTD at 12, meaning that "Plaintiffs cannot initiate or maintain a claim for infringement." MTD at 13. The Court, at the stage of litigation, is not persuaded by this argument.

"Before pursuing an infringement claim in court, . . . a copyright claimant generally must comply with § 411(a)'s requirement that 'registration of the copyright claim has been made.' " *Fourth Est. Pub. Benefit Corp. v. Wall-Street.com, LLC*, 586 U.S. 296, 301 (2019). Contrary to the Moving Defendants' decisive assertion, MTD at 10 ("In the absence of a valid copyright registration, the Court lacks subject matter jurisdiction over an action for infringement."), this is not a jurisdictional requirement, but rather a pre-condition to suit. *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 166 (2010) ("Section 411(a) . . . imposes a type of precondition to suit that supports nonjurisdictional treatment under our precedents.").

Boyd has twice registered the Demo over which Plaintiffs sue here. *See* First Registration; Second Registration. For now, the Court focuses on the First Registration, against which the Moving Defendants most vociferously mount their attack. *See* MTD at 10-13. As the Moving Defendants concede, "[p]ossession of a registration certificate creates a rebuttable presumption of the validity of the copyright and the contents of the registration." MTD at 11 (citing 17 U.S.C. §

5

410(c)).

Nevertheless, a "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application constitutes reason for holding the registration invalid and thus incapable of supporting an infringement action." *Eckes v. Card Prices Update*, 736 F.2d 859, 861–62 (2d Cir. 1984) (cleaned up).[4]  The Moving Defendants ask this Court—somewhat remarkably, given the stage of litigation and the state of the briefing—to make such a finding of invalidity here.  Specifically, the Moving Defendants argue that "Plaintiffs affirmatively allege that [Ye] contributed protectable musical expression to the . . . musical work, including the beat, chords, and melodies, and thus, that Mr. West was an author of such work."  MTD at 12.  Because the First Registration does not disclose Ye as a co-author, the argument goes, it is invalid.  *Id.*

Plaintiffs do not allege what the Moving Defendants say they do.  The Moving Defendants' assertion is based on the following paragraph in the Second Amended Complaint:

> In November of 2019, Kanye West invited Plaintiff to write music for him by providing Plaintiff Victory Boyd with some chords and melodies that he liked. Plaintiff then wrote the lyrics by herself, then completed and published a demo entitled "Like the Way it Sounds" ("Original Work").  In November of 2019, Plaintiff shared the Original Work with Kanye West.  Plaintiff did not write, create or intend to write or create the Original Work with Defendant Jahmal Gwinn or any other Defendants.

SAC ¶ 25.  Indeed, this paragraph is the sole basis upon which the Moving Defendants ask this Court to make a cascading series of determinations at the pleadings stage that could implicate the rights of various parties—before and not before this Court alike—in ways that are rather difficult to predict.

---

[4] While neither side's briefing is a model of legal clarity, the Moving Defendants' invocation of Rule 11 against Plaintiffs, Reply at 8, for distinguishing on this basis cases that Defendants chose to include in their Memorandum, MTD at 10–11 (citing *Eckes*, 736 F.2d 859); 14 (citing *Childress v. Taylor*, 945 F.2d 500 (2d Cir. 1991)), is not well received.

To begin, the Court would need to determine that the First Registration is invalid. This would entail finding that Boyd, through her lawyer, knowingly submitted inaccurate information to the Copyright Office. *Unicolors, Inc. v. H&M Hennes & Mauritz, L. P.*, 595 U.S. 178, 182 (2022). Moreover, any such inaccuracy would need to have been knowing—*i.e.*, not the result of a factual or legal mistake. *Id.* Finally, this knowingly inaccurate submission would need to have been material. *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016) ("The standard is whether the applicant knowingly included inaccurate information on its application that could have led the Copyright Office to refuse registration."). And the determination of materiality would turn on the advice of the Copyright Office, which the Court would seemingly be required to seek. *Id.* at 348.

But before any of this, the Court would need to satisfy itself that Boyd's submission to the Copyright Office did indeed contain inaccurate information. Here, that would mean determining as a matter of law that Ye was a co-author of the registered work.

The Moving Defendants have come nowhere near shouldering their burden with respect to these determinations. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 109 (2d Cir. 2001) ("PAJ, which bears the burden of proving the invalidity of a registered copyright, was required to show that there was such an overwhelming amount of evidence of nonoriginality that reasonable and fair minded men could not have found the four Yurman designs to be original." (citation and quotations omitted)); *Thomson v. Larson*, 147 F.3d 195, 200 (2d Cir. 1998) ("A co-authorship claimant bears the burden of establishing that each of the putative co-authors (1) made independently copyrightable contributions to the work; and (2) fully intended to be co-authors.").

Indeed, it is difficult to see how the Moving Defendants could have shouldered that burden at this stage of the litigation, because "[t]he question of whether the parties intended to be co-

authors is not susceptible to resolution on a motion to dismiss."[5] *Exceller Software Corp. v. Pearson Educ., Inc.*, No. 10 Civ. 381 (PGG), 2010 WL 4486944, at *4 (S.D.N.Y. Nov. 9, 2010); *see also Elliott v. Cartagena*, No. 19 Civ. 1998 (NRB), 2025 WL 486634, at *9 (S.D.N.Y. Feb. 13, 2025) ("Given this record and the standard applicable to a motion to dismiss, this Court cannot rule as a matter of law that the parties are not joint authors." (cleaned up, quotation omitted, citing *White v. DistroKid*, No. 22 Civ. 2205 (VEC) (GWG), 2024 WL 3195471, at *5 (S.D.N.Y. June 24, 2024) ("We do not definitively resolve the issue of co-authorship intent based on the allegations in the amended complaint." (cleaned up))), *reconsideration denied*, No. 19 Civ. 1998 (NRB), 2025 WL 1455761 (S.D.N.Y. May 20, 2025); *but see Trump v. Simon & Schuster, Inc.*, 791 F. Supp. 3d 470, 491 (S.D.N.Y. 2025) (finding, in holding implausible allegations that President Trump was the intended co-author of a work consisting of interviews he gave, that "it is appropriate for a court to determine on a motion to dismiss what weight to give a copyright registration").

First, "*Childress* [*v. Taylor*, 945 F.2d 500 (2d Cir. 1991)] held that collaboration alone is not sufficient to establish joint authorship. Rather, the contribution of each joint author must be independently copyrightable." *Thomson*, 147 F.3d at 200. Accordingly, "[a] contribution to a work is copyrightable if it (1) is independently created by the author and (2) possesses at least some minimal degree of creativity." *Maxwood Music Ltd. v. Malakian*, 713 F. Supp. 2d 327, 343 (S.D.N.Y. 2010). While "[t]he requisite level of creativity is extremely low," *id.*, all that the Moving Defendants have offered on this score is the assertion that "Boyd made contributions to the lyrics (only), and not the music," while "individuals other than Boyd" contributed the rest, MTD at 7. Since the Moving Defendants base this assertion entirely upon the allegations in the Second Amended Complaint, they can only mean that Ye sent Boyd "some chords and melodies

---

[5] The Court also observes that it is not obvious how Defendants plan to establish, at any stage of the litigation, Ye's co-authorship, given that he, as someone who is not a party to this case, seeks no such relief on his own behalf.

that he liked." SAC ¶ 25. Without more detail, the Court cannot comfortably hold that these "chords and melodies" were independently copyrightable contributions to the Demo.

Second, and in any event, "one cannot be deemed to be a joint author without actually collaborating in the work's preparation." *Weissmann v. Freeman*, 868 F.2d 1313, 1318 (2d Cir. 1989). This is because "the contribution even of significant language to a work does not automatically suffice to confer co-author status on the contributor. Under *Childress,* a specific finding of mutual intent remains necessary." *Thomson*, 147 F.3d at 202. This entails a "nuanced inquiry into factual indicia of ownership and authorship, such as how a collaborator regarded herself in relation to the work in terms of billing and credit, decisionmaking, and the right to enter into contracts." *Id.* at 201.

Admittedly, the case of "words and music combined into a song" is ordinarily a "fairly straightforward" example of a jointly authored work. *Childress*, 945 F.2d at 504. Nevertheless, the Court can scarcely begin to conduct the requisite "nuanced inquiry into factual indicia of ownership and authorship," *Thomson*, 147 F.3d at 201, on the basis of the record before it at this stage of the litigation. While the pleadings are nothing if not clear that "Plaintiff did not write, create or intend to write or create the Original Work with Defendant Jahmal Gwinn or any other Defendants," SAC ¶ 25, there exist almost no "factual indicia" in the record before the Court with respect to the collaborative relationship between her and Ye—the very relationship that the Moving Defendants assert entitles them to dismissal of Plaintiffs' claims. Indeed, the Moving Defendnats do not even address the three controlling indicia of joint authorship outlined in *Thomson* at all.

Instead, the most the Court can discern from the pleadings and moving papers is that Boyd "completed" the Demo on her own after receiving "some chords and melodies" from Ye, SAC ¶ 25; the Defendants credited Boyd in the metadata provided to streaming services, *id.* ¶ 42; and

9

Audemars Piguet understood Boyd to have the right to contractually authorize third-party exploitation of the work, *id.* ¶ 45. *Cf. 16 Casa Duse, LLC v. Merkin*, 791 F.3d 247, 260–61 (2d Cir. 2015) (addressing, in related "dominant author" context, decisionmaking authority, billing and credit, and third-party contracting).

Because the First Registration is, for purposes of this Motion, sufficient to support an infringement action, the Court need not address extensively the Moving Defendants arguments with respect to the Second Registration. *See* MTD at 14–16. Here, too, the Moving Defendants argument is that, because "a song's lyrics cannot be registered separately from a song's music if the music and lyrics form part of a single unitary work,"[6] *id.* at 14, and because "Boyd has admitted that 'Kanye West invited Plaintiff to write music for him by providing Plaintiff Victory Boyd with some chords and melodies that he liked and that Plaintiff then wrote the lyrics by herself,' " *id.* at 15 (quoting SAC ¶ 25), the Second Registration must also be invalid.

The Court acknowledges the Moving Defendants point that, where lyrics are part of a joint work, they are not generally afforded copyright protection separately from the song of which they form a part. *See* MTD at 14 (citing, *inter alia*, Edward *B. Marks Music Corp. v. Jerry Vogel Music Co.*, 140 F.2d 266, 267 (2d Cir. 1944); *see also 16 Casa Duse*, 791 F.3d at 257 ("The Act's definition of 'joint work,' a work prepared by multiple authors 'with the intention that their **contributions** be merged into inseparable or interdependent parts of a unitary whole,' suggests that such inseparable contributions are not themselves 'works of authorship.' " (quoting 17 U.S.C. § 101, citation omitted, emphasis added in original)); *Childress*, 945 F.2d at 505 ("[P]arts of a unitary whole are 'interdependent' when they have some meaning standing alone but achieve their primary significance because of their combined effect, as in the case of the words and music of a song.").

---

[6] The Second Registration purports to be for lyrics only.

However, this does not seem to be a foregone legal conclusion, particularly where, as here, joint authorship has not been established. *See Elohim EPF USA, Inc. v. 162 D & Y Corp.*, 707 F. Supp. 3d 372, 397 (S.D.N.Y. 2023) ("Song lyrics enjoy independent copyright protection as 'literary works,' and the right to print a song's lyrics is exclusively that of the copyright holder under 17 U.S.C. § 106(1)." (quoting *ABKCO Music, Inc. v. Stellar Recs., Inc.*, 96 F.3d 60, 64 (2d Cir. 1996), *abrogated on other grounds*, *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388 (2006)).[7]

Similarly, the Court recognizes that, even on a motion to dismiss, "a court . . . faced with conflicting or adverse copyright registrations . . . must"—or, at least, may—"make an independent determination as to ownership, and may conclude that no competing registration has *prima facie* validity." *Trump v. Simon & Schuster, Inc.*, 791 F. Supp. 3d at 490–91. Here, however, any conflict between the First and Second Registrations does not rise to a level at which the Court is compelled to hold the former invalid. Most importantly, the Court declines to hold that Plaintiffs' attempt in the Second Registration to secure copyright protection over the lyrics only—perhaps in response to the motion practice in this case—somehow constitutes an admission that the First Registration was knowingly mistaken to have claimed copyright over the whole composition. *See* Reply at 1 (characterizing the fact of the Second Registration as "a tacit admission that the first [was] deficient").

The issue of publication poses a closer question. In a footnote, the Moving Defendants point out that the Second Registration's "designation as "unpublished" is . . . inconsistent with [the] [F]irst [R]egistration, which indicated a publication date of July 28, 2023." MTD at 7–8 n.4. "[W]rongly identifying published works as unpublished has been deemed a fundamental

---

[7] The Court is aware that Plaintiffs purported to register the lyrics as a work of "[m]usic" in the Second Registration, but, because the Court declines in any event to rule on the validity of the Second Registration at this stage, it need not resolve the question of whether this was a knowing and material mistake.

11

registration error requiring invalidation of a copyright registration . . . ." *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d 347, 352 (S.D.N.Y. 2016) (quotation omitted).  The Moving Defendants, however, provide no authority for the proposition—actually, they do not even posit the proposition, so much as obliquely suggest it—that wrongly identifying an unpublished work as published, or merely misstating the date of publication, constitutes such an error.[8]  Indeed, the Moving Defendants do not even argue that the First Registration's "published" designation was incorrect.  *See* Reply at 2 n.3 ("It is unclear how the composition can be **unpublished** as of June 20, 2025, when Boyd also alleges that the same composition underlies, and is embodied in, the *Telekinesis* sound recording, which was published on June 28, 2023." (emphasis original)).

Accordingly, because the Moving Defendants have not established a "knowing failure to advise the Copyright Office of facts which might have occasioned a rejection of the application," *Eckes*, 736 at 861, the Court declines at the pleadings stage to "issue a request to the Register of Copyrights to advise the Court whether knowledge" of any such mistakes "would have caused the Register to refuse registration." *Palmer/Kane LLC v. Rosen Book Works LLC*, 188 F. Supp. 3d at

---

[8] It does seem, at least, that the publication date listed on the First Registration was incorrect, given that "[p]ublication occurs when **by consent of the copyright owner**, the original or tangible copies of a work are sold, leased, loaned, given away, or otherwise made available to the general public." *Shoptalk, Ltd. v. Concorde-New Horizons Corp.*, 168 F.3d 586, 590 (2d Cir. 1999) (emphasis added, cleaned up, quoting *Bartok v. Boosey & Hawkes, Inc.*, 523 F.2d 941, 945 (2d Cir.1975)); *see also* 17 U.S.C. § 101 (" 'Publication' is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending.  The offering to distribute copies or phonorecords to a group of persons for purposes of further distribution, public performance, or public display, constitutes publication.").  Here, the First Registration's publication date seems to refer to the date upon which the infringing work was released, *compare* First Registration at 1 (listing date of publication as "2023-07-28") *with* SAC ¶ 40 ("On July 28, 2023 the Defendants commercially released the Infringing Work, entitled 'Telekenesis [sic].' "), which, as alleged, was obviously not with Plaintiffs' consent.  Nevertheless, the Court need not decide when, or even whether, publication occurred, because the Moving Defendants do not make this argument, instead arguing (very briefly) that the Second Registration was incorrect to have designated the work unpublished.  *See* MTD at 7 n.4.

In any event, to the extent that there was a mistake in the First Registration, it is difficult to see how it was knowing.  *See Unicolors*, 595 U.S. at 182 (holding that mistakes of law are protected).  Nor have the Moving Defendants made any argument whatsoever with respect to the materiality of such a mistake.  *Cf.* United States Copyright Office, *Compendium of Copyright Office Practices* § 1802.6(I) ("[I]f the applicant mistakenly provided a date of publication for a work that has not been published, a statement may be added to the registration record to clarify that the work is actually unpublished.").

353. And, of course, the Court declines to take the further step of "holding the [First Registration] invalid and thus incapable of supporting an infringement action." *Eckes*, 736 at 861–62.

Plaintiff The Songs of Glory, "a music publishing company, wholly owned by Boyd, and operated for the sole purpose of publishing musical compositions written, produced or acquired by Boyd," SAC ¶ 9, on the other hand, does not appear on either registration, and Plaintiffs in this respect "allege [only] that Boyd is the author and owner of the original musical composition." Opp. at 2. Accordingly, any claim of infringement by Plaintiff The Songs of Glory must be dismissed. *See* Reply at 1 n.1.

### b. Timing

The Moving Defendants also argue that "even if the [S]econd [R]egistration is valid, it cannot support Plaintiffs' " claims for statutory damages, fees, and costs. MTD at 16. While misdirected, this argument ultimately points to a meritorious one.

The Copyright Act "precludes statutory damages or attorneys' fees for 'any infringement of copyright in an unpublished work commenced before the effective date of its registration' or 'any infringement of copyright commenced after first publication of the work and before the effective date of its registration.' " *Fischer v. Forrest*, 968 F.3d 216, 220 (2d Cir. 2020) (quoting 17 U.S.C. § 412). Whether or not the Second Registration was valid, the First Registration was effective only as of December 12, 2023. First Registration at 1.

As alleged in the Second Amended Complaint, infringement commenced before then, in July 2023. *See* SAC ¶¶ 4 (" 'TELEKINESIS' . . . was first published by Defendants on July 25, 2023 (the 'Infringing Work').");  40 ("On July 28, 2023 the Defendants commercially released the Infringing Work, entitled 'Telekenesis [sic].' "). And "[c]ourts in this Circuit have consistently held that section 412 applies to ongoing acts of infringement that commenced prior to registration." *Crowley v. Jones*, 608 F. Supp. 3d 78, 88–89 (S.D.N.Y. 2022) (collecting cases).

13

Nevertheless, and "[c]ontrary to [the Moving Defendants'] contention, the Court has the discretion to award costs for *all* of the alleged infringements in this action, regardless of their timing relative to registration[, because] . . . the statute does not make registration a condition precedent for the recovery of any 'costs' aside from attorneys' fees." *Graham v. Prince*, 265 F. Supp. 3d 366, 389 (S.D.N.Y. 2017); *see also Sykel Enters., Inc. v. Patra, Ltd.*, No. 03 Civ. 3364 (TPG), 2004 WL 719181, at *7 (S.D.N.Y. Mar. 31, 2004) (similar).

## II. Preemption

Finally, the Moving Defendants also argue that "Claim Three of the SAC, which seeks an accounting of revenue derived from the allegedly[ ]infringing exploitation of LTWIS, is preempted by the Copyright Act, and must be dismissed." MTD at 17. This argument—though complicated by somewhat non-responsive briefing—has merit.

Plaintiffs' third cause of action is for an "[a]ccounting against all Defendants." SAC Count III. A claim for accounting under state law is "plainly preempted by the Copyright Act." *Elliott*, 2025 WL 486634, at *13. Here, the work in question "come[s] within the subject matter of copyright as specified by sections 102 and 103," and the right being asserted over that work is "equivalent to [at least one] of the exclusive rights within the general scope of copyright as specified by section 106." *ML Genius Holdings LLC v. Google LLC*, No. 20-3113, 2022 WL 710744, at *2–3 (2d Cir. Mar. 10, 2022) (discussing the two prongs of the statutory preemption inquiry); *see also In re Jackson*, 972 F.3d 25, 42–43 (2d Cir. 2020) (similar). In other words, "the work forming the basis of [Plaintiffs'] claims . . . fits within the Copyright Act's category of," *Baiul v. NBC Sports, a division of NBCUniversal Media LLC*, 708 F. App'x 710, 712 (2d Cir. 2017), "musical works, including any accompanying words," 17 U.S.C. § 102(a)(2), and "it is only through the basic copyright claim that anyone profiting" by infringing this work "must account to plaintiff," *Baiul*, 708 F. App'x at 712 (cleaned up).

Accordingly, because the "gravamen of [Plaintiffs'] accounting claim is [the] allegation that [D]efendants are improperly misappropriating works for which [Plaintiffs] hold[] the copyright," *McKenzie-Morris v. V.P. Recs. Retail Outlet, Inc.*, No. 22 Civ. 1138 (GHW), 2023 WL 5211054, at *11 (S.D.N.Y. Aug. 13, 2023) (collecting cases), any claim for accounting as a form of equitable relief under state law is preempted. *Trump v. Simon & Schuster, Inc.*, 791 F. Supp. 3d at 509 ("Numerous courts in this District have held that claims for an accounting based on the defendant's alleged misappropriation and exploitation of a copyright work are preempted by the Copyright Act." (cleaned up, quotation omitted, collecting cases)).[9] And, "once a district court determines that a state law claim has been completely preempted and thereby assumes jurisdiction over it, the court must then dismiss the claim for failing to state a cause of action." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 309 (2d Cir. 2004).

Plaintiffs counter that they are not bringing a claim for accounting under state law at all. *See* Opp. at 13 ("Plaintiffs' primary claims for copyright infringement arise directly under the Copyright Act . . . and are not subject to preemption analysis."); SAC ¶¶ 78–79 (asserting, in connection with Count III, that "[p]ursuant to 17 U.S.C. § 504, Plaintiff is entitled to recover all of Defendants' profits attributable to their acts of infringement . . . [and] actual damages sustained

---

[9] While, in order to be preempted, a "state law claim must not include any extra elements that make it qualitatively different from a copyright infringement claim," *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 305, such that an accounting claim based upon a breach of fiduciary duty might survive, *see Jackson*, 972 F.3d at 44–45 ("[W]e have recognized that . . . state law claims based on uses of works within the subject matter of copyright— including claims alleging breaches of fiduciary duty. . . —survive preemption when such claims include a sufficiently significant extra element that qualitatively distinguishes such claims from claims for copyright infringement." (cleaned up, quotations omitted)), "accounting claims based primarily on copyright infringement do not satisfy the 'extra element' test and are preempted." *Gary Friedrich Enters., LLC v. Marvel Enters., Inc.*, 713 F. Supp. 2d 215, 233 (S.D.N.Y. 2010) (collecting cases); *see also Levine v. Landy*, 832 F. Supp. 2d 176, 193 (N.D.N.Y. 2011) ("Whether styled as a cause of action or a requested remedy, plaintiff's request for an accounting with respect to the Group B photographs is not preempted because it is based on the parties' business relationship," whereas, "[b]ecause the accounting claim with respect to the Group A photographs is 'based primarily on copyright infringement,' it does not satisfy the extra element test and is preempted." (quoting *Gary Friedrich*, 713 F. Supp. 2d at 233)).

by virtue of Defendants' acts of infringement"). They argue, rather, that "Plaintiffs seek an accounting of profits as a remedy for copyright infringement under 17 U.S.C. § 504(b), which provides that a copyright owner is entitled to recover 'any profits of the infringer that are attributable to the infringement.' " Opp. at 13–14.

But the Copyright Act does not provide for a standalone "accounting" remedy.[10] Instead, "§ 504(b) establishes a dual-burden framework for establishing the proper measure of the infringer's profits: the plaintiff must prove the defendant's gross revenue, while the defendant must prove his deductible expenses and any element of profit not attributable to the infringement." Kenneth E. Burdon, *Accounting for Profits in A Copyright Infringement Action: A Restitutionary Perspective*, 87 B.U. L. Rev. 255, 257 (2007); *see also Semerdjian v. McDougal Littell*, 641 F. Supp. 2d 233, 246–47 (S.D.N.Y. 2009) ("Importantly, before the burden shifts to a defendant to prove its deductible expenses and then apportion profits between those attributable to infringement and those attributable to other factors, a plaintiff must first demonstrate that the defendant's revenues are reasonably related to infringement."). The Court will oversee this process if and when liability has been established. *See On Davis v. The Gap, Inc.*, 246 F.3d 152, 159 (2d Cir. 2001), *as amended* (May 15, 2001) (partially affirming grant of summary judgment in favor of defendant where plaintiff had "failed to show any causal connection between the infringement and the defendant's profits.").

---

[10] Interestingly, while a "joint author" is "subject . . . to the obligation to account to the other joint owner for any profits that are made," *Thomson*, 147 F.3d at 199, it is not immediately clear whether this "duty to account . . . derives from state or federal law." Craig Y. Allison, *Does A Copyright Coowner's Duty to Account Arise Under Federal Law?*, 90 Mich. L. Rev. 1998 (1992). But the Parties do not parse this question at that degree of nuance, and, in any event, Plaintiffs are, of course, vehement in their assertion that Defendants are not joint authors of the work at issue. *See, e.g.*, SAC ¶ 25 ("Plaintiff did not write, create or intend to write or create the Original Work with Defendant Jahmal Gwinn or any other Defendants.").

## **CONCLUSION**

Accordingly, the Motion is DENIED in part, except with respect to Plaintiff The Songs of Glory's claims of infringement, and Count III for accounting, with respect to which the motion is GRANTED.  Statutory damages and attorneys' fees will not be available for any remaining claim based upon infringement that commenced before the effective date of the First Registration.

**SO ORDERED.**

**Date:  March 9, 2026**                                                   **MARY KAY VYSKOCIL**
        **New York, NY**                                                    **United States District Judge**